COMMONWEALTH *vs*. ROGER BROWN.

Norfolk.    December 6, 1973. — December 28, 1973.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Practice, Criminal,* Security measures in court room, Fair trial, Mistrial.

A conviction in a criminal case will not be overturned by reason of security
measures in the court room taken by the judge at the trial unless he is
shown to have been arbitrary or unreasonable. [475-476]

The jury at the trial of a prisoner in a correctional institution charged with
assault and battery upon a correctional officer were not prejudiced by
the necessity of guarding and shackling the defendant and his witnesses,
also prisoners at the institution, in the courtroom, where the jury must
have known, regardless of the security measures, that the defendant and
his witnesses were convicted criminals, and where the judge cautioned
the jury to ignore the security measures. [476-477]

Comments on improvement of procedures with respect to security mea-
sures in the courtroom at a criminal trial. [478-480]

INDICTMENT found and returned in the Superior Court on
June 14, 1971.

The case was tried before *Tomasello,* J.; evidentiary hear-
ing by *Dwyer,* J.

*John B. Greene* for the defendant.

*George G. Burke,* District Attorney, *& John P. Connor,
Jr.,* Assistant District Attorney, for the Commonwealth,
submitted a brief.

KAPLAN, J.    Roger Brown and John H. Tarrant, inmates
of the Massachusetts Correctional Institution at Walpole,
were tried by a jury in Norfolk Superior Court in October,
1971, upon indictments charging them severally with assault
and battery upon a correctional officer, contrary to the
statute, G. L. c. 127, § 38B.[1] The jury found Tarrant not

---

[1]Punishment under this statute is imprisonment in a State prison for not more
than five years, the sentence to begin after all sentences outstanding and unserved at
the time of the assault. Compare G. L. c. 265, § 13A (simple assault; imprisonment
for not more than two and one half years in a house of correction or fine of not
more than $500).

guilty, but Brown guilty, and Brown was sentenced to one to two years at Walpole following completion of his current sentence.

Brown (hereafter called the defendant) pursues his appeal under G. L. c. 278, §§ 33A-33G. Abandoning other exceptions, the defendant presses assignments based only on those exceptions which support a contention that, by reason of excessive security precautions taken during trial, he was deprived of a fair trial with an impartial jury.

The facts of the offence, as they could be found by the jury, may be briefly recounted. The defendant during a period of free time returned to his cell on the second tier of maximum security block 6 at Walpole. (Other inmates to the number of perhaps forty were in the block during the incident.) Finding his cell door locked (evidently because of malfunction), the defendant yelled down complainingly to the block officer, Richard A. Correia. Correia said the door would be opened in five minutes when an officer returned to the control gallery. The defendant went out of the block, then returned, confronted Correia at his desk, and said, "If you have anything against me, let it out and I'll knock your head off." Correia told the defendant he was in detention for threatening an officer. As another officer, William Gratton, appeared, the defendant left the block, Correia following, and spoke to a senior corridor officer who said if the defendant was in detention he should go back to his block. The defendant returned to block 6 with Correia still following and intending to escort the defendant to his cell. As they reached the stairway to the second tier, the defendant turned his head and asked if he was being locked up. Correia answered yes. The defendant then turned around and struck Correia in the eye. Correia, the larger man, grabbed the defendant in a "bear hug" and they fell across the stairway with Correia on top. The defendant kneed Correia in the groin and with a free hand tore at Correia's ear. Tarrant approached and attempted to lift Correia off the defendant. As officer Gratton came up, Tarrant pushed him and he fell back. Correia suffered injuries which involved surgery and

kept him out of work for nine weeks. None of the others appears to have been injured.

For the prosecution only Correia and Gratton testified.[2] For the defence, five Walpole inmates were called. The jury could have found their testimony weak and contradictory. The effect of some of it was to suggest that Correia assaulted the defendant because he had "ratted" to the senior corridor officer.

Turning to the trial in court room 10 of the Norfolk Superior Court, counsel for the defence asked for a mistrial just before the jury were empanelled because, he said, the venire as they made their way through a corridor into the court room had mingled with the two shackled defendants and officers escorting them, also headed toward the court room. Defence counsel moved again for a mistrial when the first defence witness was led to the witness stand shackled. Both motions were denied and exceptions noted. These exceptions, which ground the assignments of error, were perhaps literally short of raising the question of the asserted excessiveness of the security measures taken as a whole (the assignments attempt to stretch the exceptions), but in the circumstances of the case we take that question to be before us.[3]

When the appeal was heard in our court, the defendant's counsel sought to describe the entire situation at the trial, but was hard put to do so because the stenographic transcript was not sufficiently revealing. Accordingly the court remanded the case for an evidentiary hearing and findings of fact by a judge of the Superior Court on the issue of alleged excessive security precautions. Such a hearing was held on May 2, 1973, in the same court room 10 by a judge other than the trial judge, the latter having meanwhile retired.

By agreement of counsel the judge conducted the questioning, with further examination by counsel when they desired

---

[2] The prosecution called another witness but could make no progress with him over the defendant's objection.

[3] See n. 13 below.

it. Ten jurors testified individually.[4] In addition, there were stipulations of counsel as to certain facts; a certificate of the trial judge (he could not testify because he was then hospitalized); and photographic exhibits depicting the court room and other parts of the court house.

There was difficulty in reconstructing the scene of the trial more than a year and a half after the event, but we learn the following from the findings and record made at the hearing.

The trial judge conferred privately before trial with the sheriff of Norfolk county who informed him of the prior convictions of both the accused and of the fact that the defendant had been involved in two escapes. The sheriff said he regarded the defendants and their inmate witnesses as major security risks. In the light of this information and the sheriff's recommendation, the judge was of the opinion that shackling of the defendants and the witnesses was required for the safety of the court, the jury, and all participants at the trial.

The veniremen, including some who became jurors in the case, merged temporarily in the corridor with the defendants and four uniformed court officers guarding them as all were moving toward the court room. Although the veniremen had opportunity to see the defendants thus escorted, only one of the jurors said that he saw a person in custody at that time and he could not identify the person as the defendant.

The defendants, seated just behind the bar, were handcuffed, the handcuffs being attached to waist belts, and two uniformed court officers were stationed near each defendant (in addition there was the usual complement of court officers). All jurors had opportunity to observe these officers and the defendants' handcuffs, and some jurors saw the waist restraints.[5]

The defence witnesses were severally escorted to the wit-

---

[4]One juror had died and another was incapacitated. The jurors had not been told why they were being called and, after testifying, each left the court house without an opportunity to talk to the others.

[5]Most of the jurors questioned had difficulty in recollecting how the defendants were guarded, and did not recollect that the defendants wore waist belts.

ness stand by two uniformed correctional officers from Walpole who remained in the court room while the witnesses gave testimony and then escorted them out. The witnesses were handcuffed; at least one of them also wore a waist belt and had particular difficulty in using a chart pointer.

Court room 10 is on the first floor of the building not far from ground level and has two doorway exits; its windows are not barred.

These facts (and other facts and considerations to be mentioned shortly) are to be appraised in the light of propositions widely accepted. Shackling and other unusual security measures are of course to be avoided if possible.[6] These displays tend to create prejudice in the minds of the jury by suggesting that a defendant is a bad and dangerous person whose guilt may be virtually assumed; they may interfere with a defendant's thought processes and ease of communication with counsel; intrinsically they give affront to the dignity of the trial process.[7] The shackling of a witness can have comparable effect: it may influence a jury's judgment of credibility and further hurt the defendant in so far as the witness is conceived to be associated with him.[8] Yet the judge has a duty to do what may be necessary to prevent escape, to minimize danger of harm to those attending trial as well as to the general public, and to maintain decent order in the court room.[9] He may attach significance to the report and recommendation of an official charged with custody of prisoners placed on trial (see the sheriff's duties under G. L. c. 126, § 16), but he may not pass his responsibility to that official.[10]

---

[6]*Commonwealth* v. *Agiasottelis,* 336 Mass. 12, 16 (1957). *Way* v. *United States,* 285 F. 2d 253, 254 (10th Cir. 1960).

[7]*United States* v. *Samuel,* 431 F. 2d 610, 614, 433 F. 2d 663 (4th Cir. 1970), cert. den. sub nom. *Samuel* v. *United States,* 401 U. S. 946 (1971). *State* v. *Roberts,* 86 N. J. Super. 159, 164 (1965). *French* v. *State,* 377 P. 2d 501, 504 (Okla. Crim. App. 1963).

[8]*State* v. *Coursolle,* 255 Minn. 384, 388 (1959). Annotation, 75 A. L. R. 2d 762 (1961).

[9]*Commonwealth* v. *Millen,* 289 Mass. 441, 478 (1935). *Commonwealth* v. *Agiasottelis, supra,* n. 6, 336 Mass. at 17. *Illinois* v. *Allen,* 397 U. S. 337, 343-344 (1970).

[10]*Commonwealth* v. *Flynn,* 362 Mass. 455, 464-465 (1972). *United States* v. *Samuel, supra,* n. 7, 431 F. 2d. at 615.

When special restraints are imposed, the judge's charge to the jury should seek to quell prejudice by reasoning and warning against it.[11] Fair trial by an impartial jury is not denied when the relevant factors are weighed to a sensible conclusion that safeguards are needed which, in the circumstances of the content and conduct of the case, will not bring the rationality of the process or its decorum below an acceptable level. The burden is on a defendant to show that the judge's decision in the matter was wrong, and an appellate court, acknowledging that the judge has a range of discretion, will not reverse his decision and vacate a conviction unless he is shown to have been arbitrary or unreasonable.[12]

In the present case the judge knew that at least three prisoners held under maximum security conditions at Walpole would be in a relatively open court room during the major part of the trial. The defendant himself was charged with a crime bespeaking a reckless and hopeless rebellion against authority, after a record of involvement in two escapes in the past. Thus some special measures of restraint were indicated.[13] But it might remain a question whether those adopted did not go beyond the necessities of the case, even though the sheriff advised them. What is important here is that, from the nature of the crime charged and the evidence that had to be brought forward, the jury must anyway have learned that the defendant, the codefendant Tarrant, and all defence witnesses were prisoners at Walpole and therefore previously convicted of serious crime. The physical restraints and other shows of force in the corridor or

[11]*State* v. *Roberts, supra,* n. 7, 86 N. J. Super. at 168.

[12]*Commonwealth* v. *Agiasottelis, supra,* n..6, 336 Mass. at 16-17. *Commonwealth* v. *Chase,* 350 Mass. 738, 739-740 (1966), cert. den. sub nom. *Chase* v. *Massachusetts,* 385 U. S. 906 (1966). *Commonwealth* v. *Dirring,* 354 Mass. 523, 528 (1968). See *Woodards* v. *Cardwell,* 430 F. 2d 978, 982 (6th Cir. 1970), cert. den. sub nom. *Cardwell* v. *Woodards,* 401 U. S. 911 (1971); *Odell* v. *Hudspeth,* 189 F. 2d 300, 302 (10th Cir. 1951), cert. den. 342 U. S. 873 (1951); 1968 Ann. Surv. Mass. Law, § 8.11; Krauskopf, Physical Restraint of the Defendant in the Courtroom, 15 St. Louis U. L. J. 351 (1971); Note, 56 Minn. L. Rev. 699 (1972).

[13]It may be that defence counsel would not have disagreed with this statement. Although he moved well ahead of trial among other things to have Tarrant and the defendant appear at trial without shackles or handcuffs, his assignments of error do not refer to the exception allowed upon the denial of that motion.

court room could not, we think, have added much if any-
thing to the minds of the jurors beyond what was unavoid-
ably there as the result of the evidence itself. This is not to
say that the guaranties of fair and impartial trial are without
meaning in any proceeding against a prisoner for an alleged
crime committed in prison. Rather we say that the situation
necessarily arising on the trial of that kind of offence has an
important bearing on a judgment as to whether such a
defendant has been prejudiced in the estimation of the jury
by security precautions in the court room.[14] The point made
is a conventional one and has figured in other cases. *Loux* v.
*United States,* 389 F. 2d 911, 919 (9th Cir. 1968), cert. den.
393 U. S. 867 (1968). *United States* v. *Samuel,* 431 F. 2d 610,
614-616, 433 F. 2d 663 (4th Cir. 1970), cert. den. sub nom.
*Samuel* v. *United States,* 401 U. S. 946 (1971). *Jessup* v. *In-
diana,* 256 Ind. 409, 411-412 (1971). See *O'Shea* v. *United
States,* 400 F. 2d 78, 80 (1st Cir. 1968), cert. den. 393 U. S.
1069 (1969); *United States* v. *Larkin,* 417 F. 2d 617 (1st Cir.
1969), cert. den. sub nom. *Larkin* v. *United States,* 397 U. S.
1027 (1970). The jury were helped toward impartiality, we
believe, by the fact that the prison-orientation of the alleged
offence and the actors and witnesses was not left in enigmatic
silence: counsel in their closing arguments both commented
freely about it. The judge in his charge referred to the secur-
ity measures that had been taken and cautioned the jury
against bias on that account. In fact the jury showed a sense
of fair discrimination in acquitting Tarrant, whose interces-
sion in the struggle in block 6 could be construed as either
an interference with official discipline or an attempt to
restore order by breaking up the fight. We conclude that,
taking the trial as a whole, there is not sufficient cause to
override the judge's exercise of discretion in adopting the
safety precautions above described.[15]

---

[14]In the present case there was no indication that the defendant had trouble con-
sulting with his counsel, nor, apart from the difficulty with the chart pointer, that
there was interference with the actual presentation of evidence.

[15]Over objection, the individual jurors were asked in substance whether they felt
that their verdict was affected by the harsh reminders in the court room; all

Although the present judgment is to be affirmed, the case well illustrates how inadequate is the procedure often followed in dealing with the issue of security at trial. The trial judge perceives the security problem or is somehow advised of it. He consults privately with the sheriff and makes his decision. There is perhaps a motion by defence counsel at some stage which the judge laconically denies. When the point is later pressed, whether on appeal or by collateral attack, there are available neither the reasons of the judge nor the facts supporting the reasons. Attempts to reconstruct the facts and the reasons are unsatisfactory, for time erodes evidence and memory. Further, and quite apart from the difficulties in reviewing the trial judge's decision, we can surmise that action, taken by a trial judge without any obligation to state his reasons to others or even to himself, will be less perspicacious than action that he has to justify in some articulate and objective way. It does not follow from our affirmance of the present judgment that the trial judge adopted the wisest course that was open to him as an original matter; had he been under a duty to give reasons and respond to possible criticisms by counsel, he might have done differently and better.

Recognizing the deficiencies of the current practice, a number of courts have suggested that trial judges follow a more circumspect procedure, and the American Bar Association has made a similar recommendation. See *Loux* v. *United States, supra,* 389 F. 2d at 919; *Woodards* v. *Cardwell,* 430 F. 2d 978, 982 (6th Cir. 1970), cert. den. sub nom. *Cardwell* v. *Woodards,* 401 U. S. 911 (1971); *United States* v. *Samuel, supra,* 431 F. 2d at 614-615; *Kennedy* v. *Cardwell,* 487 F. 2d 101, 110-111 (6th Cir. 1973); *State* v. *Roberts,* 86 N. J. Super. 159, 166-168 (1965); *People* v. *Mendola,* 2 N. Y. 2d 270, 277 (1957); A. B. A. Advisory Committee on the Criminal Trial, Standards Relating to Trial by Jury (Ap-

---

answered in the negative. The line of questioning was not well advised, cf. *Commonwealth* v. *Coggins,* 324 Mass. 552, 553-554, 556 (1949); indeed the judge himself anticipated that this court might disregard the testimony. We have given it no weight.

proved Draft 1968), standard 4.1 (c) and comments, pp. 92, 93-97.[16] We agree that changes are needed.

It should be possible in some cases at least for the prosecution, the defence, and the custodial authority, without participation by the judge, to consider and agree in advance on any unusual security measures that need to be taken during trial. In the absence of agreement, we think that a judge who contemplates approving such measures should state his reasons (including recommendations received from the custodial authority) in the presence of counsel and defendant, and out of the presence of veniremen or jury, and provide an opportunity for counsel to make their objections known. If fact questions arise, they should be thrashed out. The hearing may be informal, and ordinary rules of admissibility need not be observed,[17] but a record should be made.

A checklist of the factors that may be relevant to decision is not hard to come by.[18] If the judge in his discretion decides that special precautions are to be taken, he should try to find the least drastic and conspicuous measures reasonably available that will meet the particular need. See *Dorman* v. *United States,* 435 F. 2d 385, 397-398 (D. C. Cir. 1970); *Kennedy* v. *Cardwell, supra,* at 111; Note, 56 Minn. L. Rev. 699,

---

[16]The standard reads: "(c) Defendants and witnesses should not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order. If the trial judge orders such restraint, he should enter into the record of the case the reasons therefor. Whenever physical restraint of a defendant or witness occurs in the presence of jurors trying the case, the judge should instruct those jurors that such restraint is not to be considered in assessing the proof and determining guilt."

[17]See *State* v. *Roberts, supra,* 86 N. J. Super. at 166-167: "His [the trial judge's] knowledge may stem from official records or what law enforcement officers have told him. . . . It has even been said that the trial court may take judicial notice of facts generally within the limits of its jurisdiction. . . . However, such information or knowledge should be spread on the record before trial, and out of the presence of the jury, and defendant should be afforded reasonable opportunity to meet that information. . . ."

[18]The A. B. A. report, n. 16, *supra,* mentions the following in a nonexhaustive list (at 96, n. 9): seriousness of the present charge, the person's character, his past record, past escapes or attempted escapes, evidence of a present plan to escape, threats of harm to others or to cause a disturbance, self-destructive tendency, risk of mob violence or of attempted revenge by others, possibility of rescue by offenders still at large. See also *Kennedy* v. *Cardwell, supra,* 487 F. 2d at 110, 111.

710-711 (1972).[19] And the judge should assist the jury with an emphatic charge warning against bias and against inferring guilt of a defendant from the fact that security precautions were taken.[20]

*Judgment affirmed.*

---

[19]The measures need not necessarily remain the same throughout trial. For example, it may be reasonable to increase precautions at the critical stage of the bringing in of the verdict.

[20]We have dealt here with jury trials. As to trial or other extended appearance before the judge alone, the major danger discussed above — that the mind of the triers may be infected by the sight of shackles or the like — falls away sharply. Accordingly, agreement on any special measures should not be difficult. If there is no agreement, the judge may ordinarily rely on the custodial authority's judgment as to whether some restraints are needed, unless it becomes manifest that a mistake has been made. Grounds of objection by counsel will be quite limited and there should be few if any occasions for extended factual inquiries. This is clear enough as to brief appearances of defendants before a judge, e.g., for calendar assignment, and will commonly be true even when the judge will be the sole trier of the facts. The judge may then dispense with making a record of the matter or, if he prefers, record a summary statement. If the judge does find it necessary to enter into factual inquiries, a situation may be reached where, after ruling on security, he feels he has heard too much and prefers to have another judge preside on the merits, cf. *Corey* v. *Commonwealth, ante,* 137, 141-142 n. 7 (1973), but the occasions for such discretionary withdrawal will be rare.

We have not dealt in this opinion with security measures because of a disturbance in open court, as to which see *Illinois* v. *Allen,* 397 U. S. 337 (1970).