COMMONWEALTH vs. JAMES FLANAGAN.

Essex.  September 15, 1983. — January 12, 1984.

Present: HALE, C.J., PERRETTA, & KASS, JJ.

*Assault by Means of Dangerous Weapon.  Assault on Armed Entry of
Dwelling House.  Practice, Criminal, Security measures in courtroom,
Duplicitous convictions.*

In the circumstances, the judge at the trial of armed assault charges did
    not abuse his discretion in requiring the defendant to remain in the
    prisoner's dock during trial.  [367-371]
Assault by means of a dangerous weapon, G. L. c. 265, § 15B, and entering
    a dwelling while armed with a dangerous weapon and therein assault-
    ing another with the intent to commit a felony, G. L. c. 265, § 18A, are
    separate offenses, and a defendant indicted for both offenses could prop-
    erly be convicted and sentenced on each indictment.  [371-372]

INDICTMENTS found and returned in the Superior Court
Department on February 12, 1979.

The cases were tried before *Ronan*, J.

*Daniel E. Callahan* for the defendant.

*Lila Heideman*, Assistant District Attorney, for the Com-
monwealth.

PERRETTA, J.   At the defendant's trial on indictments
charging him with assault while armed in a dwelling and
assault by means of a dangerous weapon, evidence was pre-
sented to the jury to show that on August 9, 1978, about
6:00 P.M., he and a codefendant, one Alfio D'Agata,[1] broke
open an apartment door with a baseball bat, assaulted the
tenant and his guest with a knife, and slashed telephone
wires and two waterbeds.[2]  The defendant claims on appeal

[1] D'Agata was indicted on identical charges to which he pleaded guilty
on the second day of trial.

[2] The defendant was also convicted on an indictment charging him
with malicious injury to personal property.· That conviction, however,
was placed on file and is not before us.  *Commonwealth* v. *Delgado*, 367
Mass. 432, 438 (1975).

that the trial judge erred in requiring him to remain in the prisoner's dock during trial and in imposing sentences alleged to be duplicitous. We affirm the judgments.

1. *The Prisoner's Dock.*

The day before trial was to commence, counsel for the defendant and D'Agata asked that they be seated during their trial in the same fashion as defendants released on bail, that is, "just . . . outside the dock, rather than sitting in the dock." Their request was taken up at a lobby conference. The trial judge considered the facts that the defendant "was serving time in Florida," that he also had been defaulted three times, that he had received a notice to surrender on two probation matters, and that D'Agata, who was on parole at the time of the present offenses, was awaiting trial on charges of armed robbery and escape. The trial judge concluded that there were "reasonable grounds . . . to anticipate that there could be problems if they were removed from the dock." He went on to state: "I will also articulate one further reason, that I will not make you privy to, but I will impound it so that the appellate court may have the benefit of that."

At the conclusion of the lobby conference and in the absence of the defendant, D'Agata, and their attorneys, the trial judge stated for the record the additional basis for his decision to use the prisoner's dock. That morning, the trial judge related, the court officer in charge of the session had informed him that the sheriff's department had sent word that the defendant "might attempt to flee." The trial judge explained that he would not make that information public but would instead impound the record of his statement because "[t]he source of the information . . . would appear to be a source, the disclosure of which could result in physical harm to the informant." The trial judge expressly found the information was an additional basis and that he "would have reached the same result in any event."

The defendant made several requests throughout the course of the trial to be advised of the trial judge's additional reason to have the defendant in the dock. The trial judge

assured defense counsel that it had nothing to do with "any evidence in this case," that the defendant's appellate rights had been preserved, and that disclosure of defense counsel would be made "after the case is over."

Upon the jury's return of the verdicts, the trial judge held a second lobby conference and advised defense counsel that, although he was about to reveal the requested information, defense counsel was not to disclose the matter to the defendant. The trial judge then told counsel that the sheriff had informed a court officer that a conversation to the effect that there might be an attempt to escape during the defendant's trial had been overheard at a house of correction. The trial judge stated that he took no position on whether there was any truth in the conversation; rather, he had acted in the interests of security and relied on his experience that when potential escapes "are a problem . . . they usually come from the back of the courtroom, and it takes about a minute or so." He explained that in considering the facilities, the personnel, and "the physical structure that is here, and that I am here, as well as you . . . [i]t seemed prudent to close the doors over behind the bar enclosure . . . and to make use of . . . the dock, just so that we then had about thirty seconds worth of warning." The impoundment order was lifted in June of 1983, at the Commonwealth's request in light of the defendant's appeal.

The defendant argues that the recited facts establish that the trial judge failed to follow the "more circumspect procedures" set out in *Commonwealth* v. *Brown,* 364 Mass. 471, 478-480 (1973). We see no error in the trial judge's decision that some security measures were necessary and that the dock was the least restrictive measure available. See *Commonwealth* v. *Moore,* 379 Mass. 106, 111 (1979).

The reasons for the trial judge's decision to employ security measures are fully disclosed on the record. See *Commonwealth* v. *Brown,* 364 Mass. at 479; *Commonwealth* v. *Moore,* 379 Mass. at 111. We consider first the need for those measures. The trial judge more than once stated that he had two separate and distinct bases for his action, the de-

fendant's criminal record and the multi-level hearsay conversation. However, in reviewing the trial judge's decision, we look to the circumstances as a totality and do not consider whether the defendant's record alone would justify use of the prisoner's dock.[3] The defendant was serving a prison sentence in Florida at the time of trial, he had a history of defaults, the crimes for which he was being tried involved violence, his codefendant had been convicted of violent crimes and escape, and the trial judge had been alerted to a conversation concerning the possibility of an escape. It is of no consequence that the conversation was hearsay. See *Commonwealth* v. *Brown,* 364 Mass. at 479 ("ordinary rules of admissibility need not be observed").

Though *Commonwealth* v. *Brown* advises that "a judge who contemplates approving such measures should state his reasons (including recommendations received from the custodial authority) in the presence of counsel and defendant

---

[3] There is dispute as to whether at the time of his ruling the trial judge had a complete and accurate understanding of the defendant's criminal record. The trial judge stated that in reaching his decision he had read the defendant's history of convictions. It is on this basis that the Commonwealth asked a single justice of this court for leave to supplement the record under Mass.R.A.P. 8(e), as appearing in 378 Mass. 934 (1979), by including a copy of the defendant's criminal record. Counsel for the defendant (who was not trial counsel) opposed the motion on the ground that the proffered criminal record contains entries made subsequent to the defendant's trial and provides that the information therein recited "is not certified [and] . . . is for [probation] office use only." The single justice referred the motion to the panel assigned to decide the case.

Although we think it could be inferred from certain statements made by the trial judge and the defendant's trial attorney that the defendant's entire criminal record had been considered by the trial judge at the time of his ruling, it is unnecessary for us to pass upon the Commonwealth's motion. We think the trial judge's decision to use the prisoner's dock is supported by the combination of the defendant's criminal convictions as they appear in the unsupplemented record *and* the hearsay conversation.

We note, however, that the trial judge is in a far better position than we to pass upon a motion under rule 8(e) when the accuracy of the events sought to be reflected in the record is in dispute. It would have been more appropriate for the Commonwealth to have presented its motion to the trial judge. See generally *Bechtel* v. *Paul Clark, Inc.,* 10 Mass. App. Ct. 685, 692-695 (1980).

. . . [and] [i]f fact questions arise, they should be thrashed out," we think the rule flexible enough to be tailored to meet a situation such as that here presented, provided a record is made. *Id.*

It is obvious from the record that the trial judge was concerned with security. We cannot fault him for his apprehension about the alleged informant's safety (should disclosure be made) and, hence, making his decision about the dock without "thrashing out" the truth of the conversation. This is not a case where the trial judge delegated his authority to custodial personnel, see e.g., *United States* v. *Samuel,* 431 F.2d 610, 615 (4th Cir. 1970); *State* v. *Roberts,* 86 N.J. Super. 159 (1965), or violated the defendant's absolute right to be present and heard on the matter, see e.g., *LaChappelle* v. *Moran,* 699 F.2d 560, 565 (1st Cir. 1983); *Proffitt* v. *Wainwright,* 685 F.2d 1227, 1256 (11th Cir. 1982) (citing *Snyder* v. *Massachusetts,* 291 U.S. 97, 105-106 [1934]), cert. denied, 464 U.S. 1003 (1983); *Commonwealth* v. *Dupont,* 2 Mass. App. Ct. 566, 573 (1974), and cases therein cited. We conclude that the record contains a sufficient showing that some security measures were necessary, and we next consider whether the dock was "the least restrictive measure available." *Commonwealth* v. *Moore,* 379 Mass. at 111.

The only information appearing in the record on the issue of least restrictive means is the trial judge's statement to counsel at the second lobby conference — that in reaching his decision he had considered the facilities, the personnel, "the physical structure that is here," and the time needed to thwart an attempt to escape. Although this statement is perhaps more conclusory than descriptive, defense counsel neither questioned nor challenged it, notwithstanding his opportunity so to do at that time.[4]

---

[4] In his brief, the defendant argues that the trial judge could have had the alleged informant placed in protective custody or transferred to another house of correction. Although these alternatives might have relieved the trial judge of any worry about the informant's safety upon disclosure of the conversation, they would have done nothing to diminish his concern for courthouse security in the event of an escape attempt.

Because the statement was made after the jury had re-
turned its verdicts, the defendant describes this portion of
the transcript as *"post hoc* justification" for the use of the
dock. We think that characterization unwarranted, espe-
cially in view of trial counsel's own failure to qualify the
trial judge's assessment of the facilities and personnel. More-
over, that statement is consistent with (and expansive of)
the concern for security which the trial judge read into the
record at the conclusion of the pretrial lobby conference.
While completed subsequent to the verdicts, the record was
established sufficiently close in time to the actual events so
as not to be susceptible to attack as a reconstruction of facts
and reasons made after a time span which could "erode[ ]
evidence and memory." *Commonwealth* v. *Brown,* 364
Mass. at 478. We cannot say on this record that the trial
judge's conclusion, that less restrictive means were unsatis-
factory or unavailable, was erroneous.

Assuming, for purposes of decision, that the record on this
point is less than clear, we see no risk of prejudice to the de-
fendant. The trial judge gave a forceful instruction to the
jury on the presumption of innocence, warning that they
were to draw no inference adverse to the defendant from
"matters of no consequence," such as the facts that he "may
have been arrested or inquired of," that he "may have been
at some station house or courthouse," that "the grand jury
has made an accusation," that he "is here at the bar," or
that he "is in the dock." See *Commonwealth* v. *Moore,* 379
Mass. at 111.

2. *Duplicitous Convictions.*

The defendant claims duplication in the charges against
him under G. L. c. 265, § 15B (assault by means of a dan-
gerous weapon), and G. L. c. 265, § 18A (entering a dwell-
ing while armed with a dangerous weapon and therein
assaulting another with the intent to commit a felony). He
isolates the weapon and assault elements of each of the stat-
utes to argue that § 15B is a lesser included offense of § 18A.

To support a conviction under § 15B, the Commonwealth
must show that the threat of harm was by means of a dan-

gerous weapon. Under § 18A, although the defendant must be armed with a dangerous weapon at the time of the entry of the dwelling, there is no requirement that a weapon be used in the necessary assault. It is, however, essential to a conviction under § 18A (but not § 15B) that the Commonwealth prove that the threat of harm was made with a specific intent to commit a felony. See *Commonwealth v. Connors*, 13 Mass. App. Ct. 1005, 1007 (1982). See generally Nolan, Criminal Law §§ 323 & 324 (1976). "Thus each indictment required proof of at least one fact not required for proof of the other indictment." *Salemme v. Commonwealth*, 370 Mass. 421, 424 (1976). See also *Cepulonis v. Commonwealth*, 384 Mass. 495, 501 n.5 (1981) ("As long as the proof of the elements of the offenses requires different facts, an overlap in the facts offered to establish the crimes is not significant").

The defendant's convictions are not duplicitous in either a technical or a real sense. See *Commonwealth v. St. Pierre*, 377 Mass. 650, 662-663 (1979). When the occupants of the apartment heard their front door being banged upon with the baseball bat and smashed open, they ran into a bedroom and shut and held the bedroom door in a futile attempt to protect themselves from the defendant and D'Agata, who, still armed with the bat, pushed open that second door. The occupants were then threatened with a knife as the room was ransacked in a search for pills.

*Judgments affirmed.*