COMMONWEALTH *vs.* WAYNE C. MONTGOMERY. November 14, 1986.
*Search and Seizure,* Threshold police inquiry. *Firearms. Practice, Criminal,* Required finding, Security measures in courtroom, Instructions to jury.

The defendant was convicted of unlawfully carrying a firearm, being a second and subsequent offense, and of the unlawful possession of ammunition.[1] The defendant raises numerous grounds of appeal. We affirm the conviction on the carrying charge.

1. *Motion to suppress.* We take our facts from the findings dictated by the motion judge after hearing the testimony of Officer Sullivan, a Saugus police officer. After noticing a red glow reflected on the wall of a

---

[1] The latter conviction was filed and is not before us. See *Commonwealth* v. *Hoffer,* 375 Mass. 369, 370 n.1 (1978).

building from the brake lights of a car in a shopping center, Officer Sullivan observed a Mercedes Benz cruising slowly at about five miles an hour. The time was 2:30 A.M. The car had two occupants and was coming from the service area in the rear of the shopping center. At that hour all the stores in the center had been closed for several hours. Sullivan knew that numerous break-ins had occurred at the center.

After observing the car for a few moments, Sullivan activated his strobe lights ·and his siren and stopped the car. He also obtained back-up help. The defendant was in the driver's seat. While Officer Sullivan was talking to the defendant and asking him for his driver's license, Sullivan noticed the wooden stock of a weapon under the driver's feet. The car was registered to the passenger.

Sullivan ordered the defendant to get out of the car and put his hands up on its roof. As the defendant was coming out, Sullivan looked into the car and saw another weapon, a nine millimeter handgun. Sullivan frisked the defendant and found an ammunition clip fitting the second weapon.

The judge concluded that the police had enough facts to justify the initial stop. We see no error. The facts articulated by Officer Sullivan were at least as ample as those in *Commonwealth* v. *Wren,* 391 Mass. 705, 706-708 (1984), which led police officers in that case "reasonably [to] suspect that the occupants were 'casing' the neighborhood . . . ." *Id.* at 708.

The balance of the search also presents no difficulty. Having seen the weapon in plain view, Sullivan could take reasonable precautions for his safety, including ordering the defendant out of the car. *Commonwealth* v. *Ferrara,* 376 Mass. 502, 505 (1978). *Commonwealth* v. *Farmer,* 12 Mass. App. Ct. 961, 962 (1981). He could also look at the area of the car where he had seen the first weapon. *Commonwealth* v. *Almeida,* 373 Mass. 266, 272-273 (1977), *S.C.,* 381 Mass. 420 (1980). *Commonwealth* v. *Lucido,* 18 Mass. App. Ct. 941, 942-943 (1984). *Commonwealth* v. *Oreto,* 20 Mass. App. Ct. 581, 586 (1985). The stop and subsequent search being warranted by the facts found by the judge, there was no error in denying the motion to suppress.

2. *Required Finding of Not Guilty.* The defendant's claim that he was entitled to a required finding of not guilty at the close of the Commonwealth's case or at the close of his own case is without merit. The evidence at trial that the handgun was positioned underneath the left leg area on the driver's side of the car, see *Commonwealth* v. *Albano,* 373 Mass. 132, 134-135 (1977), that the defendant's ammunition clip fit that gun, and that the ammunition clip found on the passenger did not fit the handgun found on the driver's side but only the one the passenger was carrying, was sufficient to withstand the defendant's motion. A rational trier of fact could, under the standard of *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979), find that the firearm was under the defendant's control in the motor vehicle.

3. *Leg Shackles.* More troublesome is the question of the use of leg shackles at the trial. The defendant was allowed to sit at counsel table without

handcuffs but was required to wear leg shackles despite his objection. We assume from the description of counsel's table and the judge's comments that at least some jurors saw this security measure. Prior to the empanelment of the jury, the defendant had filed a motion to be free of handcuffs and shackles and to sit at counsel table. The prosecutor objected to the motion, saying that the defendant presented a security risk and had been transferred from the Salem house of correction to Walpole for that reason.

Defense counsel indicated that the defendant was then being housed at Concord and that there was no hard evidence that he was a security risk, although counsel acknowledged that the defendant had been accused of an attempted escape. The judge held an evidentiary hearing, at which a court officer testified that he "was informed by Salem personnel over at the jail that [the defendant] is definitely an escape risk" and that, as a consequence, he had been transferred from Salem jail to a safer institution. The court officer had also been told by one of the jail guards that the defendant was a "brown belt in karate," a fact which he, the court officer, believed created a risk if no restraints were imposed. He also testified that there was a warrant outstanding for a default in another county.[2]

Immediately prior to hearing the motion to remove the shackles, the judge had considered another of the defendant's motions, namely, a motion to exclude the record of his convictions. As an exhibit to that motion, the defendant's counsel had offered the defendant's probation record, saying, "the convictions in a majority of cases involved the use of firearms." Thus a record of convictions involving firearms was before the judge when he denied the motion to remove the shackles.

"Although it would have been better for the judge to state on the record his reasons for seating the defendant [with shackles], it is evident that the judge was concerned with security." *Commonwealth* v. *Moore,* 379 Mass. 106, 111 (1979). See *Commonwealth* v. *Brown,* 364 Mass. 471, 478-480 (1973); *Commonwealth* v. *Flanagan,* 17 Mass. App. Ct. 366, 370 (1984). There was evidence before him that the defendant posed a security risk. The judge forcefully instructed on the presumption of innocence, although the judge did not, as suggested in *Brown, supra,* at 480, specifically instruct the jury to draw no inference from the fact that the defendant had leg shackles. The defendant did not seek such an instruction. See *Commonwealth* v. *Drew,* 397 Mass. 65, 81 n.15 (1986).

The trial judge has a range of discretion in this matter, and an appellate court will not reverse his decision unless it is shown to have been arbitrary or unreasonable. *Commonwealth* v. *Brown,* 364 Mass. at 476. Here, any risk of prejudice (see *Commonwealth* v. *Moore,* 379 Mass. at 111) was mitigated, at least to some degree, by the fact the defendant was allowed to sit at counsel table, which also enabled the defendant to participate fully

---

[2] The officer testified that there were many warrants outstanding, but it appears that that testimony was not accurate.

in the trial. Further, unlike the judge in *Commonwealth* v. *DeVasto*, 7 Mass. App. Ct. 363, 366 (1979), where far more prejudicial security measures were imposed, the judge here made careful inquiry into the question of security before allowing the shackles. While the judge should have followed the procedures set forth in *Commonwealth* v. *Brown*, 364 Mass. at 478-480, we conclude, as did the court in that case at 477, that, "taking the trial as a whole, there is not sufficient cause to override the judge's exercise of discretion in adopting the safety precautions . . . ."

4. *Jury Instructions.* In his initial charge the judge explained that in order to convict the defendant, the Commonwealth must prove that he had "A, knowledge of the weapon's location; B, the ability to exercise dominion and control over it; and C, the intention to exercise dominion and control over it." The jury subsequently requested a "redefinition of the elements of control." In responding, the judge repeated these three elements of the crime and went on to say, "[C]ontrol is . . . to exercise restraint or direct[ ] influence over. So, then, to paraphrase it, we would say control is the *right* to possession" (emphasis supplied).

Contrary to the defendant's suggestion, the judge did not equate the greater with the lesser offence. Unlike *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 554 (1981), where the judge said "'control' was like 'possession'" — and even in that case the charge was upheld — the judge here said control is the *right* to possession. Such right surely implies control. There was no error.

*Judgment affirmed.*

*William R. Hill, Jr.,* Committee for Public Counsel Services, for the defendant.

*Richard A. McGovern,* Assistant District Attorney, for the Commonwealth.