1. The evidence. There was evidence to show that on November 2, 1993, Aaron Wade was entertaining friends, including Vicki Jiminez, who was pregnant with the defendant Smith’s child. Upon hearing a commotion in the hallway followed by a knock on Wade’s door, Jiminez fled the apartment through the back exit. Wade inquired who was there, Smith identified himself, Wade opened the door, and Smith asked if Jiminez was in the apartment. Wade said no, and the defendants began to walk into the apartment. When Wade tried to push them back into the hallway, the defendants pulled out guns and pointed them at his head. Wade backed into his apartment with Smith demanding: “Where’s Vicki? Where’s my stuff?” When Wade replied that he did not know what Smith was talking about, Smith told Samuel to shoot Wade if he moved. Smith then searched each room of the apartment and all the closets while Samuel stayed with Wade, yelling, “Don’t move. Where is she? Where’s the stuff?” When finished with his search, Smith returned to Samuel, pointed his gun at Wade, and told him, “Tell Vicki I was here.”
There was also evidence (the testimony of the investigating police officer) to show that after leaving the apartment, the defendants met Jiminez on the street. Smith demanded to know what she had done with his money. A loud argument between Smith and Jiminez ensued during which she told him that she had used his money, $250, to buy a leather jacket. The defendants walked away, and Jiminez returned to Wade’s apartment. Neither defendant displayed a weapon during this encounter.
2. Armed assault within a dwelling. “Conviction under G. L. c. 265, *823 § 18A, of armed assault in a dwelling requires proof of three elements: (1) entry of a dwelling while armed (2) an assault on someone in the dwelling; and (3) a specific intent, accompanying the assault, to commit a felony.” Commonwealth v. Donoghue, 23 Mass. App. Ct. 103, 111-112 (1986), cert, denied, 481 U.S. 1022 (1987). The defendants argue that there was insufficient evidence to show their specific intent to commit a felony factually distinct from the assault on Wade at the time of the intrusion into his dwelling. See id. at 113 (“armed assault charge would not be proper unless . . . the assault was designed to accomplish a further factually distinct felony . . .”). Relying upon Commonwealth v. Flanagan, 17 Mass. App. Ct. 366 (1984), and Commonwealth v. Squires, 28 Mass. App. Ct. 911 (1989), the Commonwealth claims that the motions for required findings of not guilty were properly denied because there was sufficient evidence of an assault by means of a dangerous weapon upon Wade separate from the assault at the time of the entry. In Flanagan, however, the victims ran into a bedroom and held the door shut as soon as they heard the defendant and another smashing open the front door to the apartment with a baseball bat. The bedroom door was then smashed open and the occupants threatened with a knife while the room was ransacked in a search for pills. In Squires, the defendant and two others, armed with a shotgun, broke into the victim’s home where they remained two and one-half to three hours, terrorizing the victim and killing his cat. Taking the evidence in this case in the light most favorable to the Commonwealth, see Commonwealth v. Robicheau, 421 Mass. 176, 181 (1995), we conclude that it was insufficient to show two unrelated assaults upon Wade. Cf. Commonwealth v. St. Pierre, 377 Mass. 650, 662-663 (1979).
It does not follow from that conclusion, however, that the defendants were entitled to required findings of not guilty. Keeping in mind that Smith brandished his gun as he went from room to room searching for Jiminez, we think the evidence was sufficient to allow the jury to find that the defendants entered the apartment while armed, and assaulted Wade with the specific intent to assault Jiminez by means of a dangerous weapon. See Commonwealth v. Flanagan, 17 Mass. App. Ct. at 372.
Although we see no error in the denial of the defendants’ motions for required findings of not guilty, we conclude that the jury instructions failed to differentiate between the underlying assault upon Wade and the intended armed assault upon Jiminez. In charging the jury on the elements of an armed assault within a dwelling with the intent to commit a felony, the trial judge identified Wade as the victim of the armed assault and particularized the intended felony as an assault by means of a dangerous weapon. In defining the elements of that crime, assault by means of a dangerous weapon, the trial judge again identified Wade as the victim. Even though the evidence of the armed assault upon Wade was overwhelming, the jury could have found that any inference of the defendants’ intent to assault Jiminez by means of a dangerous weapon was not reasonable in light of the evidence of the subsequent unarmed shouting match between the defendants and Jiminez. Compare Commonwealth v. Squires, 28 Mass. App. Ct. at 913. Although the defendants made no objections to the instructions at trial and failed to raise the issue on appeal, see Commonwealth v. Trowbridge, 419 Mass. 750, 762 (1995), we conclude that, on the evidence presented, the given instructions created a substantial risk that the jury *824 convicted the defendants of two crimes for “essentially a single assault.” Commonwealth v. Donoghue, 23 Mass. App. Ct. at 113.
J. W. Carney, Jr. (.Andrew M. D’Angelo with him) for the defendants.
Christopher P. Hodgens, Assistant District Attorney, for the Commonwealth.
3. Evidence of witness’s fear. Our conclusion, that the defendants’ convictions must be reversed, makes it unnecessary for us to consider whether evidence of a witness’s reluctance to testify was unduly prejudicial. The admissibility of such evidence is a matter of discretion to be exercised by the trial judge. See Commonwealth v. Auguste, 418 Mass. 643, 647 (1994), and cases therein cited. We will not say that the evidence was so irrelevant as to be inadmissible at retrial on the indictments. Although there is some force to the defendants’ claim that the prosecutor mischaracterized that evidence in her closing argument, there is no need to determine whether any misstatment created a substantial risk of a miscarriage of justice.
The judgments are reversed, the verdicts set aside, and the cases are remanded to the Superior Court for a new trial.

So ordered.