COMMONWEALTH *vs.* JOHN P. QUINN
(and ten companion cases[1]).

No. 06-P-773.

Plymouth. January 12, 2007. - March 20, 2007.

Present: KANTROWITZ, TRAINOR & KATZMANN, JJ.

*Practice, Criminal,* Motion to suppress. *Constitutional Law,* Investigatory
stop. *Search and Seizure,* Motor vehicle, Reasonable suspicion.

A trial court judge erred in allowing criminal defendants' motions to suppress
   evidence gathered from an investigatory stop of their vehicle, where, view-
   ing the circumstances as a whole, the police had reasonable suspicion to
   make the stop, based on the facts that late at night in winter, an officer had
   observed fresh footprints and tire tracks suggesting that the perpetrators of
   the crime, a break-in of a gasoline station, had left by car, and that the mo-
   tor vehicle, which was the only car on the road and was in close proximity
   to the gasoline station, was stopped approximately five minutes after the
   initial dispatch regarding the break-in. [479-481]

COMPLAINTS received and sworn to in the Wareham Division
of the District Court Department on January 20, 2004.

Pretrial motions to suppress evidence were heard by *Daniel
W. O'Malley,* J.

An application for leave to prosecute an interlocutory appeal
was allowed by *Roderick L. Ireland,* J., in the Supreme Judicial
Court for the county of Suffolk, and the appeal was reported by
him to the Appeals Court.

*Carolyn A. Burbine,* Assistant District Attorney, for the
Commonwealth.

*John Matthew Glynn* for the defendants.

KANTROWITZ, J. In the middle of the night, when snow had
recently fallen, a police officer stopped the only motor vehicle
on the road driving from the direction of a gasoline station
break-in that had occurred five minutes earlier. The motion

---

[1]Four of the cases are against Quinn and six are against Shawn E. Geisler.

judge, finding that the police officer stopped the motor vehicle on a hunch, allowed the defendants' motions to suppress evidence. The Commonwealth appeals, claiming that the officer had reasonable suspicion to make the stop. We agree and reverse.

*Facts.*[2] On January 20, 2004, at approximately 1:45 A.M., officers from the Middleborough police department responded to an alarm call for a break-in at a Texaco gasoline station on Bedford Street, Route 18.[3] Officers Richard Harvey and John Graham were the first to arrive at the gasoline station only seconds after receiving the call.[4] Harvey pulled into the gasoline station and observed that the front door of the building was smashed. The officers went inside the building and saw glass on the floor and articles from the register and counter strewn about. Graham radioed that there was a break-in.

The officers checked the perimeter of the building and saw two fresh sets of footprints in the snow originating at Clay Street and leading to the gasoline station, and two additional sets of footprints leading away from the gasoline station to Clay Street. The footprints led to fresh tire tracks that were headed away from the side of the road next to the gasoline station and toward Route 18, thus suggesting that there was a motor vehicle involved. Harvey radioed information about the footprints and tire tracks.

Officer Jerry Donahue, who had arrived at the gasoline station

---

[2] The motion judge's brief findings on the defendants' motions to suppress were issued prior to *Commonwealth* v. *Isaiah*, 448 Mass. 334, 335 (2007), in which the Supreme Judicial Court concluded that where a trial judge's findings of fact were inadequate and would require the court to add facts to fill in gaps in the findings, the case had to be remanded to the trial court for further findings. The court noted that "[a]ppellate courts may supplement a judge's finding of facts *if* the evidence is uncontroverted and undisputed *and* where the judge explicitly or implicitly credited the witness's testimony" (emphasis added). *Id.* at 337. Here we conclude that the motion judge implicitly found credible the uncontroverted testimony of the police officers, and we have supplemented his findings with additional, uncontroverted facts from that testimony.

[3] Officer Jerry Donahue testified that the alarm at the Texaco station was reliable because every time the police received an alarm call from the station in the past, the police found that there had been a break-in.

[4] On his way to the gasoline station, Officer Harvey did not see any other motor vehicles on the road except for the police cruiser driven by Officer Graham.

moments after Harvey and Graham, was advised that there was a live break and that one of the front doors had been smashed. Seeing that two other police cruisers were already at the gasoline station, Donahue continued to drive south on Route 18 at about sixty to sixty-five miles per hour for approximately one-half mile until he reached a high point in the road where he observed no motor vehicles ahead of him. He then doubled back on Route 18, traveling approximately fifty to sixty miles per hour, at which point he saw motor vehicle lights ahead of him heading away from the gasoline station toward a rotary. The motion judge found that Harvey had radioed a report about the fresh tire tracks, but that Donahue had not received any such information. Donahue radioed and asked the other officers if any motor vehicles had passed their location, to which they all responded in the negative.

Donahue followed, and intended to stop, the motor vehicle, but he temporarily lost sight of it. He quickly ascertained that he could reach it if he took the Route 44 West exit.[5] Upon reaching a high point of Route 44 West (an overpass above Route 495) he could see for a distance of about one mile. Once again, he saw but one motor vehicle, now exiting Route 44 and entering Route 495 North. Donahue pursued and stopped the vehicle, within minutes of the crime.

The defendant Geisler was the driver of the motor vehicle and Quinn was the passenger. Their involvement in the break-in became readily apparent as Donahue observed, among other things, shards of glass in the car, an aluminum baseball bat covered with shards of glass, and a fresh cut oozing blood on Geisler's hand.[6] The defendants were arrested and charged with numerous offenses.[7] The motion judge granted the defendants' motions to suppress, finding that:

---

[5]When Donahue approached the rotary, he was able to see every exit ramp (Route 44 East, Route 28 North, Route 18 North) except for the ramp leading to Route 44 West. None of the exit ramps he viewed had any motor vehicles on them. Therefore, he took the Route 44 West exit.

[6]The defendants sought to suppress the evidence seized from them and their motor vehicle, to wit, cigarettes stolen from the gasoline station and found in the glove compartment; Geisler's jacket and hat, both covered with shards of glass, and his boots; Quinn's boots; two watches; a stolen radio; a mask; and statements made by Geisler wherein he admitted breaking into the gasoline station and possessing a stolen radio. Quinn exercised his right to remain silent.

[7]The defendants were each charged with breaking and entering in a building

"There was no report or information from anyone that a motor vehicle had been involved to any extent in the break-in at the Texaco [station] or had been seen in the vicinity of the Texaco gas[oline] station at or near the time of the break. After Officer Donahue had driven his police cruiser to the area of the Texaco gas[oline] station, then a half mile or so on Route 18 to a highpoint in the road, then back that half mile or so to the gas[oline] station area, then around the Middleboro rotary to the Route 44 entrance, then onto Route 44 and to a highpoint in that roadway, he saw a motor vehicle entering onto Route 495. There was nothing about that particular motor vehicle or its operation that would have indicated that its occupant(s) had committed, was committing, or was about to commit a crime. Simply, Officer Donahue had a hunch that the motor vehicle might have been involved in the break-in at the Texaco gas[oline] station."

*Discussion.* "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). See *Commonwealth* v. *Nestor N.*, 67 Mass. App. Ct. 225, 228 (2006). "[O]ur duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Scott, supra*, quoting from *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996).

"Where a defendant files a pretrial motion to suppress evidence seized during [an investigatory stop], . . . the Commonwealth bears the burden to prove that the police had reasonable suspicion, before initiating the stop, that 'a person has committed, is committing or about to commit a crime.' " *Commonwealth* v. *Walker*, 443 Mass. 867, 872, cert. denied, 546

---

in the nighttime to commit a felony, G. L. c. 266, § 16; larceny from a building, G. L. c. 266, § 20; larceny of property valued at under $250, G. L. c. 266, § 30; possession of a burglarious instrument, G. L. c. 266, § 49; and malicious destruction of property valued at over $250, G. L. c. 266, § 127. Geisler was also charged with receiving stolen property valued at over $250, G. L. c. 266, § 60, and an unspecified motor vehicle equipment violation, G. L. c. 90, § 7 (a civil infraction).

U.S. 1021 (2005), quoting from *Commonwealth* v. *Comita*, 441 Mass. 86, 91 (2004). "In determining whether an officer acts reasonably in initiating a threshold, or investigatory, stop, we view the circumstances as a whole . . . ." *Commonwealth* v. *Stoute*, 422 Mass. 782, 790 (1996).

"Reasonable suspicion may not be based on good faith or a hunch, but on specific, articulable facts and inferences that follow from the officer's experience." *Commonwealth* v. *Grandison*, 433 Mass. 135, 139 (2001). "The standard is objective: 'would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' " *Commonwealth* v. *Mercado*, 422 Mass. at 369, quoting from *Terry* v. *Ohio*, 392 U.S. 1, 21-22 (1968).

The judge concluded that Donahue acted on a hunch rather than a reasonable suspicion, as he received no report that a motor vehicle was involved in the break-in or seen near the vicinity of the gasoline station. It appears to us that stopping the *only* motor vehicle on the road, which was being driven from the direction of a crime, within minutes of that crime, was proper. Having to make a rapid decision, the officer acted permissibly. See *Commonwealth* v. *Davis*, 63 Mass. App. Ct. 88, 90-91 & n.3 (2005). See also *Commonwealth* v. *Berment*, 39 Mass. App. Ct. 522, 529-530 (1995) (Kass, J., dissenting) ("The Fourth Amendment is concerned with the right of 'the people to be secure in their persons . . . against *unreasonable* searches and seizures' " [emphasis supplied]).

There is, however, even more here when the collective knowledge of the police officers is taken into consideration. "Where a cooperative effort is involved, facts within the knowledge of one police officer have been relied on to justify the conduct of another." *Commonwealth* v. *Riggins*, 366 Mass. 81, 88 (1974). Thus, the information discovered by Harvey — that there were "fresh tire tracks . . . pulling out from the side of the road next to the Texaco station . . . heading towards Route 18" and footprints leading from the tire tracks to the gasoline station and back — was imputed to Donahue. The officers were engaged in a cooperative effort to investigate the break-in at the gasoline station, so "it is unnecessary for the detaining officer to know

all the information pertaining to the incident . . . . [T]he knowledge of one [police officer] . . . [is] the knowledge of all." *Commonwealth* v. *Zirpolo*, 37 Mass. App. Ct. 307, 311 (1994), quoting from *Commonwealth* v. *Lanoue*, 356 Mass. 337, 340 (1969). See *Commonwealth* v. *Andrews*, 34 Mass. App. Ct. 324, 327-328 (1993) (based on the collective knowledge doctrine, the officer had reasonable suspicion to conduct an investigatory stop). That this information was not heard by Donahue is of no import.

Viewing the circumstances as a whole, Donahue's investigatory stop of the motor vehicle was based on specific and articulable facts, i.e., (1) it was late at night in winter; (2) an officer observed fresh footprints and tire tracks suggesting the perpetrators left by car; (3) the motor vehicle was the only car on the road; (4) the motor vehicle was in close proximity to the gasoline station; and (5) the motor vehicle was stopped approximately five minutes after the initial dispatch. See *Commonwealth* v. *Wren*, 391 Mass. 705, 706-708 (1984) (stop proper when officer received information, at 10:15 P.M., that van, not recognizable to neighbors, was parked in front of a vacant lot and then traveled at a slow speed and sped up when the driver saw the police cruiser); *Commonwealth* v. *Montgomery*, 23 Mass. App. Ct. 909, 910 (1986) (officer had enough facts to justify initial stop of car at 2:30 A.M. traveling at low speed and coming from rear of a shopping center where many break-ins had occurred); *Commonwealth* v. *Crowley*, 29 Mass. App. Ct. 1, 4 (1990) (stop proper where officers had report that a robber was fleeing the scene down a particular street and the defendant was the only person seen running on that street a few minutes after robbery).

As such, the stop was proper and the evidence and statements secured therefrom admissible.

*Orders allowing defendants' motions to suppress reversed.*