The defendant appeals his convictions of unlawful possession of a rifle and unlawful possession of ammunition.[2] He argues that there was insufficient evidence to support the convictions, that the motion judge erred in denying postconviction discovery, and that the charges were improperly joined with the murder-related charges (see note 1, supra ). We affirm.
Background. We summarize the evidence, and the reasonable inferences therefrom, in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). On February 17, 2010, Manuel Rodrigues was shot and killed in Brockton. The previous day, the defendant had appeared at the home of his cousin, Nilton Darosa, asking for latex gloves, a ski mask, and a .45 caliber weapon. Several minutes later, the defendant returned and handed Darosa a rifle wrapped in a sheet, stating that he wanted to hide it in case the police "raided" his house.
Darosa had seen the rifle numerous times before. The first instance was in early 2010 at his mother's house. The rifle was hidden in the basement wall, and the defendant "pulled it out and showed it to [Darosa]." According to Darosa, the rifle "was supposed to be Jigga's [the defendant's nickname]." The defendant also told his friend, Joao Mendes, that he had an "AK-47,"[3] and Mendes saw the defendant carrying it on several occasions in 2009.
In August of 2010, the defendant and Darosa took the rifle to 44 Parker Street in Brockton, where the defendant lived in a private room on the second floor. Another of the defendant's cousins, Carlos Fernandes, lived in the third-floor apartment.[4] The defendant put the rifle, wrapped in a sheet, on a closed-in porch in Carlos's apartment. The defendant also brought a backpack containing the same .45 caliber weapon that Darosa had given him in February and handed it to Carlos.
In October of 2010, police executed a search warrant on all three floors at 44 Parker Street. The defendant, who was in his room on the second floor, directed the officers to a backpack in his closet that contained latex gloves and a .45 caliber magazine.[5] On the third floor, the officers discovered the rifle, still wrapped in a sheet on the closed-in porch, which was locked.[6] The magazine contained eleven live rounds and held up to forty.
The defendant and Carlos were both arrested, taken to the police station, and placed in separate cells. As a detective passed by the defendant's cell, the defendant said to him, "[Y]ou can let Carlos go." When the detective asked why, the defendant replied, "[B]ecause the AK-47 was mine. [Carlos] had nothing to do with it."
Discussion. 1. Sufficiency of the evidence. We review the evidence in the light most favorable to the Commonwealth to determine whether any "rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt." Commonwealth v. Mendez, 476 Mass. 512, 523 (2017). The Commonwealth proceeded on a theory of constructive possession, which requires proof of the defendant's "knowledge coupled with the ability and intention to exercise dominion and control" over the contraband. Commonwealth v. Romero, 464 Mass. 648, 653 (2013), quoting from Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989). The only element at issue here is the defendant's ability to exercise dominion and control.
The defendant argues that the evidence was insufficient to establish this element because the rifle and ammunition were found in a locked room, located in a separate residence from his. He relies primarily on our decision in Commonwealth v. Lovering, 89 Mass. App. Ct. 76 (2016), where we held that ownership of a firearm was insufficient, by itself, to prove the defendant's ability to control the firearm. But the facts in Lovering are distinguishable from those here. In Lovering, the firearm was discovered by the defendant's wife in the apartment that they used to share; but by that time, the defendant had moved out and had not returned to the apartment for nearly a month. Id. at 77-78. In fact, there was a legal impediment to his doing so, as his wife had obtained an abuse prevention order requiring him to stay away. Id. at 77. There was also no evidence as to the defendant's whereabouts on the day his wife found the gun. Ibid.
In contrast, in the present case the defendant was apprehended in his room, one floor below where the rifle was found by the officers. The defendant personally transported the rifle to Carlos's apartment and placed it on the porch. He confessed that the rifle was his and not Carlos's. Given this evidence of proximity and ownership, and especially considering the defendant's familial relationship with Carlos, a reasonable juror could have found that, since Carlos allowed the defendant to store the rifle in his apartment, he likewise would have allowed the defendant access to remove it. See Commonwealth v. Gouse, 461 Mass. 787, 796 (2012) ("It is well established that constructive possession does not require exclusive control"). Thus, unlike in Lovering, the evidence was sufficient to prove that the defendant had the ability to exercise control over the rifle on the date he was charged.
2. Postconviction discovery. The defendant next argues that he made a prima facie showing of prosecutorial misconduct and therefore the motion judge (who was not the trial judge) should have allowed him to take postconviction discovery. To obtain postconviction discovery, the defendant "must make a sufficient showing that the discovery is reasonably likely to uncover evidence that might warrant granting a new trial." Commonwealth v. Morgan, 453 Mass. 54, 61-62 (2009), quoting from Commonwealth v. Daniels, 445 Mass. 392, 407 (2005). This requires that the defendant "make specific, not speculative or conclusory, allegations that the newly discovered evidence would have 'materially aid[ed] the defense against the pending charges,' ... and that this evidence if explored further through discovery, could yield evidence that might have 'played an important role in the jury's deliberations and conclusions....' " Id. at 62, quoting from Daniels, 445 Mass. at 407.
We review the denial of a motion for posttrial discovery only for abuse of discretion, see Commonwealth v. Camacho, 472 Mass. 587, 598 (2015), and we see none here. As the defendant puts it, "[t]he discovery sought was intended to determine what role, if any, the prosecution played in the reversal of [Darosa's] testimony" at the murder trial of Michael Goncalves.[7] The motion judge found, however, that Darosa did not in fact reverse or recant his testimony, which is supported by the transcripts from Goncalves's trial. The defendant makes no argument that the judge erred in this respect. Instead, the defendant claims that the judge erred by not granting discovery on his allegations of prosecutorial misconduct committed in other cases, including the Goncalves case. But without a showing of misconduct in this case, the defendant failed to establish that such discovery would lead to evidence that would have materially aided his defense.[8] The judge was therefore within his discretion to deny the motion.
3. Joinder. Finally, the defendant contends that the trial judge erred in denying his motion to sever the murder-related charges from the charges pertaining to possession of the rifle. Under Mass.R.Crim.P. 9(a)(3), 378 Mass. 859 (1979), related offenses "shall" be joined for trial unless the judge "determines that joinder is not in the best interests of justice." Offenses are "related" if "they are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan." Mass.R.Crim.P. 9(a)(1), 378 Mass. 859 (1979).
"The propriety of joinder is a matter for the trial judge's discretion." Commonwealth v. Sullivan, 436 Mass. 799, 803 (2002). To show an abuse of discretion, "[t]he defendant bears the burden of demonstrating that the offenses were unrelated, and that prejudice from joinder was so compelling that it prevented him from obtaining a fair trial." Commonwealth v. Gaynor, 443 Mass. 245, 260 (2005). " 'Prejudice requiring severance does not arise from the mere fact that the defendant's chances for acquittal of [one or more charges] might have been better' had the offenses been tried separately." Commonwealth v. Spray, 467 Mass. 456, 469 (2014), quoting from Commonwealth v. Gallison, 383 Mass. 659, 672 (1981). "Rather, the defendant must show that a particular tactic or right was foreclosed by the joinder." Ibid.
The defendant has not met his burden of showing that the offenses here were unrelated. As the trial judge found, the defendant's act of hiding the rifle at Darosa's house was evidence that he planned the murder, and the subsequent seizure of the rifle "demonstrate[d] that the defendant moved weapons, including the .45 [the alleged murder weapon] from various stash houses where they eventually ended up at 44 Parker Street." Inversely, the evidence about the murder lent credibility to Darosa's testimony that the defendant brought the rifle to Darosa's house in case his own house was "raided." As the offenses "[arose] out of a course of criminal conduct or series of criminal episodes connected together," Mass.R.Crim.P. 9(a)(1), we do not think it was beyond the range of reasonable alternatives for the judge to find them related. See Commonwealth v. Pillai, 445 Mass. 175, 183 (2005) (joinder proper where evidence of one offense would likely be admissible at trial of the other to corroborate victim's testimony); Commonwealth v. Hernandez, 473 Mass. 379, 394 (2015) (joinder proper where evidence of the offenses was "inextricably intertwined" [quotations omitted] ).
Furthermore, the defendant has failed to meet his burden of proving prejudice so compelling that it requires a new trial. The defendant does not articulate any "particular tactic or right [that] was foreclosed by the joinder." Spray, 467 Mass. at 469. Instead, he argues generally that the joinder created a risk that the jury would use evidence of the murder to infer his criminal propensity or bad character. But this does not satisfy the defendant's burden of showing specific prejudice. See ibid. (while firearms and murder charges were not "related offenses," defendant failed to demonstrate prejudice where he "claim[ed] only that joinder tended to show his bad character or propensity to commit a crime"). Also, we think that the evidence on the firearms charges was overwhelming, and the fact that the jury did not convict the defendant of the murder shows "discernment ... in assessing the evidence"-"a strong indication that a misjoinder of offenses has not resulted in any actual prejudice to the defendant." Ibid., quoting from Commonwealth v. Green, 52 Mass. App. Ct. 98, 103 (2001).
Judgments affirmed.
Order denying motion for new trial and postconviction discovery affirmed.

The judge declared a mistrial on a charge of murder and three related firearms charges after the jury could not reach unanimous verdicts.

The firearm was actually a semiautomatic rifle, but was referred to by witnesses at trial as an AK-47.

To avoid confusion, we will refer to Carlos Fernandes by his first name.

The .45 caliber weapon was not recovered.

A trooper testified that "he believe[d] [the officers] were given a key by an individual at the residence."

The defendant and Goncalves were both charged in connection with the shooting of Manuel Rodrigues, but their cases were severed before trial.

We also note that the judge allowed defense counsel to review, under a protective order, one of the documents sought in the motion: a competency evaluation report of Darosa, in which he allegedly made statements that one or more prosecutors involved in the defendant's case instructed Darosa to lie at Goncalves's trial.