NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-450

COMMONWEALTH

vs.

FRANKLIN J. PINA, JR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the Superior Court, the defendant was convicted of (1) trafficking cocaine, 18-36 Grams, G. L. c. 94C, § 32E (b) (1) (trafficking cocaine); (2) illegal possession of a class B substance, G. L. c. 94C, § 34; (3) possession of a firearm without a firearm identification (FID) card, G. L. c. 269, § 10 (a); (4) possession of ammunition without an FID card, G. L. c. 269, § 10 (h) (1); (5)improper storage of a firearm, G. L. c. 140, § 131L (a), (b); and (6) cruelty to animals, G. L. c. 272, § 77 (animal cruelty).[1]  On appeal, the defendant argues that the evidence was insufficient to find him

_____

[1] The defendant also pleaded guilty to an enhanced sentence under G. L. c. 269, § 10G (b).

guilty of trafficking cocaine and animal cruelty.  He also argues it was prejudicial error for the judge to deny his motion to sever the animal cruelty indictment from the drug and firearm indictments.[2]  Because we agree that the evidence was insufficient to support the conviction of cruelty to animals, we reverse the judgment on count 6.  In all other respects, we affirm.

Background.[3]  1.  Trafficking cocaine.  In August of 2019, detectives from the Orleans Police Department began an investigation into the defendant for narcotics activity.  In early September, detectives obtained a warrant that allowed the attachment of a global positioning system (GPS) device to the defendant's truck, through which they monitored the truck's movement.  The device showed that the defendant's truck made five or six trips to Boston between September 4 and September 24, 2019.  These trips followed a routine pattern in which the truck drove round-trip from Cape Cod to Franklin Park Zoo in Boston, never remaining in Boston for more than an hour, and

_____

[2] The defendant initially challenged the convictions on counts 3 and 4 (possession of firearm and ammunition without an FID card) because the jury was not instructed on the lack of licensure element, but he conceded at oral argument that the Commonwealth presented sufficient evidence at trial to sustain those convictions.

[3] We recite the facts in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

2

making the same series of short stops on each trip. Officers never observed the defendant drive to a place of employment.

After a month of investigation, on September 20, 2019, detectives obtained three search warrants for the defendant's person, truck, and residence, respectively. On September 22, two days after obtaining the search warrants, the defendant's dog passed away after ingesting cocaine. This complicated the execution of the warrants, as investigators were concerned that the defendant would be worried that authorities would be notified of this occurrence and flee or destroy evidence in response. Detectives continued to monitor the defendant and observed that on September 23, 2019, the GPS showed that the defendant once again travelled to the area of the Franklin Park Zoo and immediately returned home. Shortly thereafter, investigators learned that the defendant was involved in a car accident, and his truck had been towed.

On the following day, September 24, officers were prepared to execute the warrants and began surveilling the defendant when he visited the autobody shop where his truck had been towed. The defendant was seen coming out of the shop holding a box and leaving as a passenger in another party's truck. The truck was stopped a short time later to execute the search warrant for the defendant's person. Upon searching the defendant, the officer recovered three cut straws with white, powdery residue on them;

corner-cut bags, also with white powdery residue; along with a large sum of cash that roughly corresponded to the price of fourteen grams of cocaine. No significant amount of cash was found on the driver of the truck, Patrick Wood.

Wood gave verbal consent to a search of the truck. During the search, an officer discovered two bags of a substance ultimately determined to be cocaine in the truck's glove compartment. The bags contained roughly fourteen grams and twenty-two grams of cocaine, respectively.

At trial, Wood testified as an immunized witness that he drove the defendant to the autobody shop and helped the defendant retrieve his belongings from the truck. When the police pulled Wood over, the defendant "freaked out and said "[w]here can I put it?" Wood testified that he then saw the defendant place a bag of cocaine in the glove box.

In the search of the defendant's residence, police found approximately fifty corner-cut plastic bags.[4] In a hallway closet immediately outside the defendant's bedroom, police found a lockbox containing a firearm with ammunition, a glass top and razors containing cocaine residue, and a glass grinder. The defendant's fingerprints were found on the lockbox. In the defendant's bedroom, police found three digital scales and

_____

[4] Plastic bags with corners cut off are an indicator of drug distribution.

4

corner-cut bags, both with the remnants of a white, powdery substance.

2. <u>Animal cruelty</u>. On September 22, 2019, the defendant's dog ingested cocaine. That morning at approximately 9:00 <u>A</u>.<u>M</u>., the defendant's wife called an emergency veterinary clinic, reporting that the dog was in distress. The veterinary office recommended that the dog be brought in for an evaluation. Approximately two hours later, the defendant called, indicated that the dog had ingested drugs, and asked whether an office visit was necessary or whether the dog might recover on its own -- the veterinarian's receptionist relayed the same advice. The defendant also discussed financing for the dog's treatment on this call.

Later that afternoon, a friend of the defendant was called to check on the dog, which was lying outside in the defendant's truck, hot, sweaty, and convulsing. The friend decided to take the dog to the veterinarian, and the defendant helped transfer the dog to her car. The dog was brought to the emergency veterinarian at approximately 4:00 <u>P</u>.<u>M</u>. that day, seven hours from the initial call to the veterinarian's office. The dog's temperature and heart rate were elevated well above normal, and her glucose levels were well below normal. The defendant arrived later and made a partial payment for the dog's care. Despite some treatment by the veterinarian, the dog passed away

5

later that evening.  At trial, the veterinarian who oversaw the dog's treatment testified that the dog likely would have had a higher chance of survival if it were brought in earlier in the day.

Discussion.  1.  Sufficiency of the evidence.  The defendant moved for required findings of not guilty at the close of the Commonwealth's case and at the close of the evidence.  Both motions were denied.  In these circumstances, "[w]e [first] consider the state of the evidence at the close of the Commonwealth's case to determine . . . whether the Commonwealth [had] presented sufficient evidence of the defendant's guilt to submit the case to the jury" (citations and quotations omitted).  Commonwealth v. Alden, 93 Mass. App. Ct. 438, 444 (2018), cert. denied, 587 U.S. 987 (2019).  We evaluate the sufficiency of the Commonwealth's evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, [a]ny rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted).  Commonwealth v. Latimore, 378 Mass. 671, 677, quoting Jackson v. Virginia, 443 U.S. 307, 318-319.  "The evidence may be direct or circumstantial, and we draw all reasonable inferences in favor of the Commonwealth."  Commonwealth v. Watson, 487 Mass. 156, 162 (2021), quoting Commonwealth v. Ayala, 481 Mass. 46, 51 (2018).  The defendant argues the evidence was insufficient to

6

support a guilty verdict for both counts 1 and 6. We take each argument in turn.

a. Trafficking cocaine. As relevant here, for the Commonwealth to prove the charge of trafficking cocaine, it must prove beyond a reasonable doubt that "(1) the defendant knowingly or intentionally (2) possessed (actually or constructively) (3) [eighteen] grams or more [but less than thirty-six grams] (4) of [cocaine] (5) with the specific intent to distribute it." Commonwealth v. Ortega, 441 Mass. 170, 174 n.7 (2004). See G. L. c. 94C, § 32E (b) (1). The defendant challenges the sufficiency of the evidence regarding the element of possession. "Proof of constructive possession requires the Commonwealth to show 'knowledge coupled with the ability and intention to exercise dominion and control.'" Commonwealth v. Cullity, 470 Mass. 1022, 1023 (2015), quoting Commonwealth v. Gonzalez, 452 Mass. 142, 146 (2008). These elements can be shown by both direct and circumstantial evidence and by the reasonable inferences from such evidence. See Commonwealth v. La Perle, 19 Mass. App. Ct. 424, 426 (1985).

At issue here is whether there was sufficient evidence that the defendant possessed the two bags of cocaine found in the glove compartment of the vehicle in which he was a passenger. The defendant's presence in the vehicle would not be sufficient by itself to establish this intention, but "presence,

7

supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.'" Cullity, 470 Mass at 1024, quoting Commonwealth v. Romero, 464 Mass. 648, 653 (2013). Such other incriminating evidence is conventionally known as a "plus factor." Ortega, 441 Mass. at 174.

The Commonwealth introduced sufficient evidence of possession of the cocaine found in the glove compartment. We first note that the Commonwealth put forth evidence of actual possession in the form of Wood's immunized testimony that he saw the defendant put the cocaine in the glove compartment. Testimony of an immunized witness may not form the sole basis for a conviction in a criminal proceeding. See Commonwealth v. Resende, 476 Mass. 141, 152 (2017). See also G. L. c. 233, § 20I. There is no support in the case law, however, for the proposition that immunized testimony is insufficient as a plus factor for constructive possession where presence is already established. This was not a situation where the defendant was inculpated for a crime by the driver despite no other corroboration. The defendant was observed by a police officer in the passenger seat of the truck, within easy reach of the glove compartment. His presence near the drugs alone is likely sufficient corroboration of the driver's testimony to sustain the possession element of G. L. c. 94C, § 32E (b) (1).

In addition to the immunized testimony, the Commonwealth introduced sufficient plus factor evidence to supplement the evidence of the defendant's presence near the cocaine. Such evidence included: the large quantity of money found on the defendant; its correspondence to the price of a common unit of sale for cocaine; the pattern of trips to and from Boston; the fact that such a trip had occurred the day before the search, coupled with the fact that another trip occurred the day after the defendant's dog ingested cocaine; the fact that the defendant made a large cash payment for the dog's care; the fact that he had returned to his truck to retrieve belongings shortly before the cocaine was found; and the fact that the police found straws and corner-cut bags with a white, powdery residue on the defendant's person. These factors permit the inference that the defendant knew of and intended to control the cocaine in the glove compartment. "An inference drawn from circumstantial evidence 'need only be reasonable and possible; it need not be necessary or inescapable.'" Commonwealth v. Merola, 405 Mass. 529, 533 (1989), quoting Commonwealth v. Beckett, 373 Mass. 329, 341 (1977). "Whether an inference is warranted or is impermissibly remote must be determined, not by hard and fast rules of law, but by experience and common sense" (citation omitted). Commonwealth v. Arias, 29 Mass. App. Ct. 613, 618 (1990), S.C. Commonwealth v. Arias, 410 Mass. 1005 (1991). It

9

was therefore not error for the judge to deny the defendant's motion for a required finding of not guilty as to count 1.

b. Animal Cruelty. At issue in this count is the provision of G. L. c. 272, § 77 that criminally penalizes anyone who, "having the charge or custody of an animal, . . . knowingly and willfully authorizes or permits it to be subjected to unnecessary torture, suffering or cruelty." The Commonwealth's theory at trial was that the defendant was responsible for making cocaine available for the dog to ingest, that he knew delaying treatment for the dog would cause it suffering, and that he delayed treatment anyway. The statute, however, penalizes suffering caused not just knowingly, but also willfully. G. L. c. 272, § 77. "To prove the defendant acted 'willfully,' . . . the Commonwealth must show the defendant intended both the underlying action and its harmful consequences. In other words, the defendant must intend for the animal to be subjected to 'unnecessary torture, suffering or cruelty'" (citation omitted). Commonwealth v. Russo, 494 Mass. 356, 365 (2024).[5] In light of this essential element of the crime, we conclude that the Commonwealth failed to introduce sufficient evidence for a rational trier of fact to find the

---

[5] We note that neither the parties nor the judge had the benefit of this case when the defendant originally moved for a required finding of not guilty.

10

defendant guilty beyond a reasonable doubt.  There is no evidence in this case that the defendant either intended his dog to ingest cocaine or that, by delaying in obtaining treatment for the dog, he intended to cause her suffering.  In fact, based upon the facts in this case, it could be argued that the opposite is true; the defendant called the veterinarian to ask whether the dog might get better on its own.  He permitted the dog to be taken to the vet and ultimately put down a deposit to pay for her care.

Again, without the benefit of Russo, the Commonwealth analogizes the facts of this case to Commonwealth v. Lufkin, 89 Mass. 579, 581 (1863), which suggests that inattention resulting in starvation would be punishable under the statute regardless of intent to inflict pain.  This analogy is inapt, however, first because causing an animal to starve is penalized under a different portion of the statute and, second, because there was no evidence that the defendant intended the dog to ingest the cocaine.  The only act that the Commonwealth asserted met the elements of the statute was the defendant's failure to obtain treatment for the dog in time to increase the chances of saving its life.  Russo makes clear that for such circumstances to rise to the level of criminality, a defendant must intend that the delay cause "unnecessary torture, suffering or cruelty."  See Russo, 494 Mass at 365.  Because of the lack of evidence

11

supporting the defendant's intent to cause unnecessary suffering to the dog, therefore, the defendant's motion for a required finding of not guilty as to animal cruelty should have been allowed.

2. Motion to sever. The defendant moved for relief from prejudicial joinder of counts 1-5 with count 6, which the judge initially allowed before ultimately denying it after the Commonwealth moved to reconsider. The defendant argues the judge erred in failing to sever count 6. We disagree.

The decision of whether to sever indictments lies within the sound discretion of the judge, and this court does not reverse that decision absent clear abuse of that discretion. Commonwealth v. Hall, 485 Mass. 145, 165 (2020). To prevail on a claim of misjoinder, the defendant must demonstrate that: (1) "the offenses were unrelated," and (2) the "prejudice from joinder was so compelling that it prevented him from obtaining a fair trial." Commonwealth v. Pillai, 445 Mass. 175, 180 (2005), quoting Commonwealth v. Gaynor, 443 Mass. 245, 260 (2005). "For the purposes of joinder, offenses are related 'if they are based on the same criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan.'" Commonwealth v. Wilkerson, 486 Mass. 159, 176 (2020), quoting Commonwealth v. Mendez, 476 Mass. 512, 519 (2017). "In making a determination whether offenses are related, we consider

12

'factual similarities, closeness of time and space, and whether evidence of the other offenses would be admissible in separate trials on each offense.'" Wilkerson, supra, quoting Commonwealth v. Hernandez, 473 Mass. 379, 393 (2015).

Here, the charges were adequately connected such that their joinder was not an abuse of discretion. The events underlying the charge in count 6 and the charges in counts 1-5 were "based on . . . [a] series of [allegedly] criminal episodes" in that the Commonwealth's investigation of the defendant's drug trafficking predated and was interrupted by the dog's ingestion of cocaine. Wilkerson, 486 Mass at 176, quoting Commonwealth v. Mendez, 476 Mass. 512, 519 (2017). The events were "[close in] time and space" and evidence of each offense would have been admissible in separate trials. Wilkerson, supra. For example, evidence that the defendant's dog ingested cocaine would have been admissible as part of the Commonwealth's description of events in the drug trafficking trial. See Commonwealth v. Drew, 397 Mass. 65, 79 (1986) ("The prosecutor was entitled to present as full a picture as possible of the events surrounding the incident itself"). The events on September 22 were relevant to show why the defendant made another trip to Boston on the 23rd and why investigators ultimately executed the search warrants in the rushed manner they did. The evidence obtained in the search of the defendant's home would similarly have been admissible in

13

a separate animal cruelty trial.  The judge, accordingly, did not abuse his discretion in determining that the offenses were related.  See Pillai, 445 Mass. at 181 (holding it is proper for a judge to focus on the similarities between offenses in totality in ruling on joinder).[6]

Conclusion.  On the indictment charging animal cruelty, the judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant.  In all other respects, the judgments are affirmed.

So ordered.

By the Court (Desmond,
  Walsh & Toone, JJ.[7]),

Paul Little

Clerk

Entered:  March 6, 2025.

---

[6] Because the offenses were related, we need not reach the question of whether the defendant was prejudiced by the joinder.

[7] The panelists are listed in order of seniority.

14